SCHEER LAW GROUP, LLP
SPENCER P. SCHEER #107750
JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
JONATHAN SEIGEL #168224
155 Redwood Drive, Suite 100
San Rafael, CA 94903
Telephone: (415) 491-8900
Facsimile: (415) 491-8910
CT.100-013S-A

Attorneys for Secured Creditor
INTEREST INCOME PARTNERS

UNITED STATES BANKRUPTCY COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re: | Bk. No. 10-11577-AJ |
| ANIL BEMBEY dba ANIL'S FINE FOODS dba BLOOMING ROSE VINEYARDS,<br><br>Debtor. | Chapter 12<br><br>**OBJECTIONS TO DEBTOR'S FIRST AMENDED CHAPTER 12 PLAN; REQUEST FOR JUDICIAL NOTICE**<br><br>Confirmation Hearing -<br>Date: August 27, 2010<br>Time: 10:00 a.m.<br>Place: US Bankruptcy Court<br>       99 South E. Street<br>       Santa Rosa, CA |

INTEREST INCOME PARTNERS, its assignees and/or successors ("IIP"), submits these Objections to the First Amended Chapter 12 Plan filed by Debtor in these proceedings. These Objections are based on the pleadings and records on file in this matters as well as the within memorandum. In addition, IIP requests that this Court take Judicial Notice of the Schedules, Statement of Financial Affairs and Petition filed by the Debtor in these proceedings, and the Proofs of Claim and Notice of Security Interest in Rents and Profits filed by IIP.

## FACTS

1. IIP is a secured creditor of Debtor. IIP loaned Debtor the following sums secured by the real property located at 870 Butler Avenue, Santa Rosa, CA ("**Property**"): [1]

   (i) Third Deed of Trust in the Principal Amount of $200,000.00, evidenced by a promissory note ("**First Note**") and deed of trust ("**Third Deed of Trust**"). The current amount owing on the loan secured by the First Note is $255,435.33, as of April 29, 2010.

   (ii) Fourth Deed of Trust in the Principal Amount of $100,000.00, evidenced by a promissory note ("**Second Note**") and deed of trust ("**Fourth Deed of Trust**"). The current amount owing on the loan secured by the Second Note is $144,701.19, as of April 29, 2010.

   (iii) Fifth Deed of Trust in the Principal Amount of $200,000.00, evidenced by a promissory note ("**Third Note**") and deed of trust ("**Fifth Deed of Trust**"). The current amount owing on the loan secured by the Third Note is $153,083.69, as of April 12, 2010.

   All of the aforesaid loans are solely secured by the Property (See Proofs of Claim file by IIC in this proceeding).

2. Debtor has listed and classified IIP as Class 4, 5 & 6 Claimants, with an allowed secured claim, capped at the difference between the value of the Property and the payoff of the debts secured by senior liens encumbering the Property (**Debtor's Plan §§3.04, 3.05 & 3.06**) and has asserted that IIP is wholly unsecured and that Debtor intends to "strip off the liens of IIP (**Debtor's Plan §§4.04, 4.05, 4.06, and 6.01**). Unsecured creditors are classified as Class 10 claimants and are to be paid nothing under the Plan (**Debtor's Plan §§ 3.10, and 4.10**).

//

3. Debtor has listed the value of the Property in his schedules as $600,000 (**See Schedule A**) and has listed the amount of the senior liens on the Property, in **Schedule D** as follows:

   First Trust Deed (BAC Home Loans): $477,522.39

   Second Trust Deed (BAC Home Loans) $236,457.52.[2]

Accordingly, Debtor has listed the total amount of the IIP and senior liens on the Property at $1,228,979.91. IIP believes that the Property is worth substantially more than $600,000 and is likely worth between $725,000 $825,000.

4. Debtor lists his business as "dba Anil's Fine Foods, dba Blooming Rose Vineyard" and has listed 50% interest in Butler Vines ("BV"), worth $12,500.00. It is unclear what business Debtor is engaged in. The majority of the debts owing to creditors in these proceedings are for loans secured by their residence. The Debtor has listed the following debts:

   Secured Claims: $1,248,715.33 (Schedule D).

   Unsecured Priority Claims: $0 (Schedule E).

   Unsecured Non-Priority Claims: $1,462.938.11 (Schedule F).

The vast majority of the unsecured claims are either credit card debt or are debts related to personal "guarantee of LLC Debts" (**See Schedule F,** listing "$1,085,000.00 in unsecured debt to the Bank of America for "guaranty of LLC debt"). It is unclear what LLC interests Debtor owns. Debtor has listed a "Partnership with AJ Vines, LLC" as an exempt asset worth $12,500.00 and has listed a 50% partner interest in Butler Vines, worth $12,500.00, and has listed a 100% membership in Shanker Nivas, LLC, worth $0 (**See Schedule B**).

5. Debtor has listed business operations that he conducts or has conducted. The first entity, Shanker Nivas, LLC dba Kabab & Curry House, dba Maharaja Lounge is specified to have ended on February 2010, and is specified to have an address of 507 4th Street, Santa, Rosa, CA. The

---

[1] IIP also was a secured creditor with a second trust deed lien on the real property located at 507 4th Street, Santa Rosa, CA. However, IIP foreclosed on April 12, 2010 and now owns the Property.

Objections to Plan     Page 3

second entity is Equity Edge dba Advantage America, which is specified to have ended on in May 2005, and which has a Rohnert Park address. The third entity is Anil's Fine Foods, which is specified to have ended on in May 2005, and which has a Rohnert Park address. The last entity is Butler Vines, which is said to be in the "wine production and sales" business and which is said to have commenced operations on the Property in April 2010, immediately prior to the filing of this petition (**See Debtor's Statement of Financial Affairs**, filed in these proceedings).

      6. Debtor has listed income for 2009 of $977,490 with "Business Loss" of $106,886 and Farm {loss} of $19,902. Debtor has listed income for 2008 of $890,506, with "Business Loss" of $225,532 and Farm {loss} of $21,106 (See Debtors' statement of Financial Affairs.) There is no breakout of what business operation or farming operating generates the income and what the income and expenses are for any business operation of Debtor.

      7. On or about June 15, 2010, Debtor filed with this court or submitted to the Chapter 12 Trustee a document entitled CASH RECEIPTS AND DISBURSEMENTS REPORT ("**Report**"). In accordance with the Report, Debtor shows no cash received and no sales for the time period January 1, 2010 to April 29, 2010. The Report shows "farming" related sales in 2008 of $12,500 related to wine products and estimated sales in 2010 of $30,000. The Report clearly shows that farming income (well under $80,000 for 2008 and 2009) is small when related to total income of the Debtor (specified to be almost One Million Dollars for 2008 and 2009-See Statement of Financial Affairs) for his other business operations over the years, and that the expenses related to maintaining payments on his mortgage loans is by far the biggest expense related to the putative "farming operation." The Report also shows Debtor does not generate income necessary to fund a plan from farming operations. A copy of the Report is attached hereto as Exhibit "A" and is incorporated by reference.

---

[2] It appears that the loan has been paid down to approximately $200,000, in accordance with the information in the Report, See Exhibit A.

Objections to Plan                                                      Page 4

8. On or about May 26, 2010, IIP filed a Notice of Security Interest in Rents and Profits with this Court.[3] Debtor has not specified what he is doing with any cash collateral that is generated from the operation of the Property and has not obtained the consent of IIP or this Court to utilize cash collateral related to the operation of any business on the Property.

## OBJECTIONS TO PLAN

8. Debtor does not appear to qualify for relief under Chapter 12. Debtor does not appear to be maintaining a farming operation. It does not appear that 50% or more of Debtor's aggregate non-contingent liquidated debts (excluding debt related to their principal residence) arise out of a farming operation. It does not appear that the debt related to Debtor's principal residence is substantially related to a farming operation. In addition, it does not appear that Debtor received more than 50% of his gross income from farming operations. Debtor's schedules show that the balance of the debts he has relates to home mortgages or guaranties of debt related to LLC entities that he owns an interest in. Business losses listed in Debtor's Statement of Financial Affairs shows that income and losses claimed by Debtor is by far related to other business operations and not farming.

The income claimed by the Debtor that is related to farming operations in 2008 through the present, pales in comparison to the overall income that Debtor lists for these years. Even the income that Debtor contends is now generated related to the Property appears to be based on sale of the grapes to another entity that Debtor is engaged in business with and not from farming of the Debtor. It is also clear that the primary expense relate to the Debtor's "farming operation" is the payment of the mortgages he owes and not the actual operation of the farming operation.

As held by the court in the case of <u>In re Gibson, 355 B.R. 807, 810 (Bankr. E.D. Cal. 2006)</u>

> "Section 101(18) requires that a family farmer be "engaged" in a farming operation. HN5By requiring a debtor to be engaged in a farming operation, Congress limited chapter

---

[3] IIP requests that this Court take judicial notice of the filing of said Notice, in accordance with F.R.E. 201.

Objections to Plan                                                                 Page 5

12 eligibility to true farmers and excluded speculators and investors who use farm losses to shelter non-farm income". *Id* at page 810.

Accordingly, Debtor should not be (deemed eligible for relief under Chapter 12, in accordance with the requirements of 11 USC §101 (18). Debtor appears to be using the "guise" of a family farmer to restructure home mortgage debt, which is not a permissible purpose under Chapter 12 in the absence of a legitimate family farming business.

9. If Debtor is not eligible for relief under Chapter 12, he would be unable to modify the rights of IIP on the Property as proposed in the Plan, prohibited by 11 USC § 1322 (b) or 1123 (b), as IIP's loans are secured solely by the Property.

10. If Debtor is not eligible for relief under Chapter 12, he would be unable to modify the rights of IIP on the Property as proposed in the Plan, in accordance with 11 USC § 1322 (b) or 1123 (b), as IIP's loans are secured solely by the Property. Accordingly, IIP would likely be entitled to payments on its secured claims to the full extent of its lien. IIP believes that the Property is worth substantially more than $600,000. Accordingly, the Plan is not feasible and is violative of 11 USC 1226 (a) (6).

11. Unless Debtor qualifies for relief under Chapter 12, the proposed plan should not be deemed to be filed in good faith and should be deemed violative of 11 USC 1225 (a)(3). Using Chapter 12 to avoid mortgage payment requirements that would be applicable under Chapter 11 should not be deemed in good faith.

12. If Debtor is operating a business on the Property, he has not obtained proper authority to use cash collateral as required by 11 USC § 363.

13. Debtor has not conducted any business on the Property that can be said to constitute a Family Farming operation, until shortly before the filing of his petition. All IIP debt (as well as senior liens) was in place on the Property prior to the commencement of the alleged family farming operation. All prior businesses that were designated to be operating from the Property do not appear to be farming related business. While Debtor now asserts assert minimal farming income in 2008 and 2009 (See Report), there is nothing but an operational loss from the efforts and the farming

appears to be nothing more than either an investment or hobby. In addition, **Debtor proposes paying unsecured creditors nothing under the Plan**. Accordingly, the filing of this petition appears to be designed to avoid the requirements applicable to Debtor in Chapter 11 or Chapter 7 and does not benefit unsecured creditors at all. Accordingly, the filing should be deemed in bad faith and violative of 11 USC §1225 (a)(3).

14. It appears that there is equity in the Property. If the Property were sold, IIP would likely get more if this case is converted to Chapter 7, than what is proposed under the Plan. Accordingly, the Plan is violative of 11 USC§ 1225(a)(4).

15. It is unclear what Debtor's proposed disposable income is it is therefore unclear whether Debtor is providing all Debtor's disposable income under the Plan, as required by 11 USC § 1225(b)(1)(B).

WHEREFORE, IIP prays that:

(i). That Debtor's Plan not be confirmed.

(ii). That these proceedings be converted to Chapter 7 or dismissed.

(iii). For such further relief as is just.


SCHEER LAW GROUP, LLP

DATED: August 5, 2010        /s/ Spencer P. Scheer
                              #107750