Entered on Docket
March 06, 2014
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

Mar 6 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NC-13-1253-KiDJu |
| ANIL BEMBEY, | Bk. No. 10-11577-AJ |
|        Debtor. | |
| ANIL BEMBEY, | |
|        Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| STEVEN MARC OLSON, | |
|        Appellee. | |

Submitted Without Oral Argument[2]
on February 20, 2014

Filed - March 6, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Chief Bankruptcy Judge, Presiding

Appearances: Pro se appellant Anil Bembey on brief; pro se appellee Steven M. Olson, Esq. of the Law Offices of Steven M. Olson on brief.

Before: KIRSCHER, DUNN and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] In an order entered on October 8, 2013, the Panel unanimously determined that this appeal is suitable for submission without oral argument pursuant to Fed. R. Bankr. P. 8012. See Ninth Circuit BAP R. 8012-1.

Chapter 12[3] debtor Anil Bembey ("Bembey") appeals an order approving his former counsel's application for compensation. We AFFIRM.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Events prior to the application for compensation**

Bembey is a real estate/mortgage broker and operates a wine grape farming business. He retained appellee, attorney Steven Marc Olson ("Olson"), to represent him in a chapter 12 bankruptcy case. Under the written fee agreement, Bembey agreed to pay a $7,000 retainer, and to pay Olson his hourly rate of $400.00 for any legal services provided once the retainer was exhausted, which would "be paid via Clients' Chapter 12 bankruptcy case." Bembey also agreed to pay certain necessary costs.

Olson filed Bembey's chapter 12 bankruptcy case as agreed. Bembey owns one real property in Santa Rosa ("Property"), which he valued at $600,000. His Schedule D reflected that the Property was subject to seven liens, amounting to a secured debt of $1.25 million: Bank of America ("B of A") held the first and second deeds of trust for $477,522.39 and $236,457.52 respectively; Interest Income Partners ("IIP") held the third, fourth and fifth deeds of trust for $200,000, $100,000 and $215,000 respectively; and the sixth and seventh liens consisted of a mechanic's lien for $6,483 and a judgment lien for $4,774. Bembey also owed two small priority tax claims to the IRS ($1,700) and to the State Board of Equalization (the "State") ($2,500). Bembey's unsecured debt

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

totaled about $1.46 million.

On July 23, 2010, Bembey filed his first amended chapter 12 plan ("Plan"). It proposed to reamortize the debt to B of A secured by the first deed of trust (Class 2) over 40 years at 3.25% per annum. It also proposed to strip down the debt owed to B of A on the second deed of trust (Class 3) to the difference between the value of the Property and the payoff amount for the first lien and to reamortize this stripped-down debt over 40 years at 3.5% per annum. The Plan likewise proposed to strip off all three of IIP's liens (Classes 4-6) and to strip off the mechanic's and judgment liens (Classes 8 & 9). The Plan proposed to pay nothing to the unsecured creditors (Class 10). The tax liens (Class 1) were to be paid in 60 equal monthly installments.

IIP objected to confirmation of the Plan, contending, among other things, that Bembey was not eligible to be a chapter 12 debtor, and that he appeared to be using the "guise" of a family farmer to restructure mortgage debt on his principal residence, something he could not do if he were in chapter 11 or 13. Before that objection was heard, IIP filed a motion to dismiss Bembey's case or convert it to chapter 7. One week later, IIP filed a motion for relief from stay, seeking to proceed with its foreclosure rights against the Property. The stay relief motion was supported by a declaration from a real estate appraiser, who valued the Property at $787,000.

Bembey then filed his motion to value liens. In support, Bembey offered a declaration from a real estate appraiser, who valued the Property at $500,000. Bembey requested that B of A's second lien (currently valued at $236,457.52) be valued at

-3-

$27,828.38, the difference between the Property's $500,000 value and the present payoff of B of A's first lien, and to value all other liens, including all three of IIP's, at zero.

No party formally opposed Bembey's motion to value liens. In the order granting the motion, B of A's second lien was valued at $27,828.38, and the mechanic's and judgment lien were valued at zero. As for creditor IIP, Olson successfully negotiated a settlement resolving all of IIP's objections and pending motions. As reflected in the order granting the motion to value liens, the settlement reduced IIP's secured claims from the scheduled $515,000 to $110,000. More specifically, as set forth in the order approving Bembey's chapter 12 Plan, $60,000 of the $110,000 would be amortized over 30 years at 6% per annum, the remaining $50,000 would accrue interest at 6% but with no installment payments, and the entire balance would be due and payable to IIP by October 1, 2015.

Post-confirmation, various issues arose regarding the administration of Bembey's Plan, including the chapter 12 trustee's erroneous short payments to B of A and treatment of the State's imposed penalties and interest on its tax claim. Both Olson and Bembey worked on resolving these issues, although Bembey claimed he resolved everything himself without Olson's assistance.

In an email dated December 14, 2011, Bembey requested that Olson not expend any more time on the B of A payment matter "and incur any additional fees that I am unable to pay[.]" However, Bembey stated that he would copy Olson on any correspondence between him and B of A. In his reply email sent three hours later, Olson agreed not to work on the B of A issue. However, at

-4-

one point, the attorney for B of A informed Bembey that because he was represented by counsel, he needed to speak to Olson, and that speaking to Bembey directly could get him in trouble with the State Bar. Reviewing Olson's time records, he billed Bembey $800.00 (2 hours) between December 15, 2011 and April 5, 2012, for reviewing B of A correspondence and for one telephone call with B of A's counsel. Nothing in the record shows that Bembey ever instructed Olson not to work on the State's tax matter. Olson billed Bembey $1,160.00 in that regard.

In January 2013, Bembey informed Olson by email that he was considering selling the Property and paying off all of his creditors from the sale proceeds. A series of emails ensued. Olson advised Bembey that he would have to modify the Plan to accomplish this, but that discussing the matter first with the trustee was the best course of action. However, Olson advised Bembey that nothing needed to be done until a listing price for the Property had been determined. Olson also advised Bembey that to the extent the bankruptcy court approved his additional compensation, Bembey would need to pay that amount through his modified plan. Olson explained that he had not yet prepared a fee application because he knew Bembey's cash flow was tight. Bembey then admitted that he had already listed a lease/purchase option on the Property, so Olson told Bembey that he would email the trustee's attorney and inform his office about the potential sale and motion to modify. Bembey replied, "Thank you, seems like a good course of action."

**B. Olson's application for compensation and Bembey's objection**

Olson filed his application for compensation, seeking fees of

-5-

$32,618.00 (less the $7,000 retainer) and reimbursement of $412.56 for expenses, which included the chapter 12 filing fee, credit report, photocopies and postage ("Fee Application"). Olson had voluntarily reduced his compensation request by $3,000. The Fee Application was supported by Olson's declaration and his contemporaneous time records. Olson broke down his services into four categories: General Administration, 20.5 hours, totaling $7,400; Motion to Value Liens, 16.2 hours, totaling $6,480; Chapter 12 Plan, 25.5 hours, totaling $10,200; and Post-Confirmation Issues, 27.7 hours, totaling $11,000.50.

Bembey objected to the Fee Application and terminated Olson. Although difficult to discern, the crux of Bembey's 30 objections was that Olson billed for post-confirmation tasks that Bembey argued were not authorized and did not provide him with any beneficial result. Specifically, Bembey disputed Olson's billing for the B of A matter, which he claimed was still unresolved after 30 months, and his billing for the State's tax claim matter, which Bembey claimed he ultimately resolved himself. Bembey also argued that Olson was not authorized to contact the trustee about the lease/sale of the Property, so time for that should be disallowed. Bembey also asserted the settlement with IIP was not beneficial to him. Bembey accused Olson of billing him for time spent communicating with staff members at Olson's attorney rate of $400.00/hour rather than the staff rate of $135.00/hour. He also accused Olson of "fabricating" his bill, that Olson had given "wrong advice," was "uninformed," and that Olson's work was "uneffective." Finally, Bembey was upset that Olson had never provided him with any interim invoices to show the amount of fees

-6-

he was incurring. Bembey contended that he could not afford to
pay Olson's fees as requested. Nonetheless, Bembey agreed that
Olson was entitled to something, and he offered to pay him
$10,200, less the $7,000 retainer, and all costs of $412.56, for a
total of $3,512.56[4] to be paid through the Plan.

**C.    The bankruptcy court's disposition on the Fee Application**

The bankruptcy court held a hearing on the Fee Application on
May 8, 2013. Olson and Bembey appeared. Bembey argued first,
thanking the court for the opportunity to explain his objection.
Bembey initially contended that he understood the $7,000 retainer
would cover the entire cost of his bankruptcy. After Bembey had
argued for several more minutes, the bankruptcy court interjected:

> THE COURT: Your case was a Chapter 12, right?
>
> MR. BEMBEY: Yes, sir.
>
> THE COURT: There's only a half dozen or so lawyers in
> the County who are capable of successfully pulling off a
> Chapter 12. You found one of them. Do you understand
> the difference — my suspicion is that the $5,000 you were
> quoted was for a Chapter 13. It would be a very low
> figure for a Chapter 12, number one, and number two, I
> don't believe Mr. Hindley does Chapter 12's, at least not
> that I can recall.

Hr'g Tr. (May 8, 2013) 7:10-19. Bembey also expressed his
dissatisfaction with settling IIP's claims, arguing that the loans
were usurious. Bembey contended that he should have been fighting
IIP's usurious loans, not settling them. In response, the court
noted that Bembey must have agreed to the IIP settlement or his
Plan would not have been confirmed. Bembey conceded that he had.
However, Bembey argued that had he fought IIP over the usurious

---

[4] The offered amounts, less the credit, equals $3,612.56.

-7-

loans, they "would have gone away," and he never would have had to file bankruptcy. Id. at 13:19-14:1. In response, the court asked Bembey how he knew all that, and opined that Bembey was "making a lot of assumptions that [the court could not] see a basis for." Id. at 14:3-13.

After further argument from Bembey, Olson then presented his argument. In discussing the background of Bembey's debts and the details of the Plan and IIP's objections, Olson argued that he provided Bembey with the best results possible: two conflicting appraisal values existed for the Property and the court could have ruled that Bembey was not eligible for chapter 12, which would have rendered him unable to modify the first lien and strip the second lien as he did. As for the possible sale of the Property, Olson argued that Bembey's contention that he never authorized Olson to approach the trustee was contradicted by the series of emails that ended with Bembey's agreement and authorization for Olson to proceed. Olson refuted Bembey's accusation that he billed him for time spent with his staff at his attorney rate, contending that any time billed at $400.00/hour was for time Olson spent with Bembey, and time Bembey spent with staff was not billed but absorbed as overhead.

Rather than give an oral ruling, the bankruptcy court announced that it was taking the matter under submission because it wanted more time to again review Bembey's lengthy opposition. After Bembey again complained of Olson's lack of results, the court stated:

> I think that you don't have an appreciation for what Mr. Olson did and how difficult it was to pull it off. I can see just from listening to you and listening to

-8-

> him, at least four or five issues which could have caused you to have a total disaster. And it appears to me that Mr. Olson skillfully helped you through the process, and I don't think there were many attorneys who could have done that.
>
> . . .
>
> I can tell you for an absolute fact that you would not be standing here with a confirmed Plan without Mr. Olson. Not only is there no way you could have done it by yourself, but most of the other attorneys in the County could not have done it. It took a very detailed knowledge of Chapter 12 law, which is very complicated, and an understanding of the weak points in your case, in order for you to be guided through it. Now the fact that you don't see it is unfortunate, but I can tell you as someone looking from the outside that I can see it, and I know how difficult it was to get a Plan confirmed in your case. Very few attorneys could have done that for you, and you could not have done it by yourself.

Id. at 22:20-23:2, 23:9-21. Bembey responded: "Your Honor, it's the post-confirmation billing that I was questioning. That's where the majority of the dollars lie." Id. at 23:22-24. The court stated again that it had read Bembey's objection prior to the hearing, and that it would take another "very close look at it[.]" Id. at 23:25, 24:8-9.

The bankruptcy court issued its Memorandum on the Fee Application on May 9, 2013, approving it in its entirety. It entered the related order on May 17, 2013 ("Fee Order"). Bembey's timely appeal followed. The bankruptcy court imposed a stay on the Fee Order until this appeal has been concluded.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion when it approved Olson's Fee Application in its entirety?

-9-

## IV. STANDARDS OF REVIEW

The Panel will not disturb a bankruptcy court's award of professional fees unless the court abused its discretion or erroneously applied the law. Ferrette & Slater v. United States Tr. (In re Garcia), 335 B.R. 717, 723 (9th Cir. BAP 2005)(citing Leichty v. Neary (In re Strand), 375 F.3d 854, 857 (9th Cir. 2004)). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). "In reviewing fee awards, great deference is granted to the trial court judge, whose intimate knowledge of the nuances of the underlying case uniquely positions him to construct a condign award." In re Little, 484 B.R. 506, 509 (1st Cir. BAP 2013) (internal quotations, citations omitted).

We review due process challenges de novo. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009).

We can affirm on any basis supported by the record, even where the issue was not expressly considered by the bankruptcy court. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989).

## V. DISCUSSION

Bembey's opening brief is difficult to follow and often fails to cite to the record or any supporting authority. For the most part, it reasserts the same factual arguments he presented to the bankruptcy court but fails to show, with any supporting authority, why the bankruptcy court abused its discretion in approving Olson's Fee Application. However, we are aware of Bembey's pro se

-10-

status and our obligation to construe his pleadings liberally. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)(we generally construe pro se appellant's briefs liberally). Therefore, we exercise our discretion to review the record to see if it supports the bankruptcy court's decision.[5]

**A.  Governing law**

Under § 330(a)(4)(B), a bankruptcy court may award reasonable compensation to a debtor's attorney in a chapter 12 case for representing the debtor's interests, based on a consideration of the benefit and necessity of the services to the debtor and other factors set forth in § 330.  § 330(a)(4)(B).  See also Boone v. Derham-Burk (In re Eliapo), 468 F.3d 592, 597 (9th Cir. 2006) (applying statute to chapter 13).  Section 330(a)(3) lists factors to be considered in determining whether to allow a professional's fees:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

---

[5] Bembey asserts there are ten issues on appeal, most of which are related to one issue:  whether the bankruptcy court abused its discretion in approving Olson's fees as requested.  We address his arguments in turn.

-11-

```
                (E) with respect to a professional person, whether the
                person is board certified or otherwise has demonstrated
                skill and experience in the bankruptcy field; and

                (F) whether the compensation is reasonable based on the
                customary compensation charged by comparably skilled
                practitioners in cases other than cases under this title.
```

§ 330(a)(3).  See also In re Eliapo, 468 F.3d at 597.

Compensation awarded under § 330 is an administrative expense of

the estate.  § 503(b)(2).  The Local Rules for the Northern

District of California do not provide for a presumed reasonable

fee or "no look" fee in chapter 12 cases.

**B.   The bankruptcy court did not abuse its discretion when it approved the Fee Application in its entirety.**

While the bankruptcy court did not specify under which section of the Code it was awarding Olson's Fee Application in either its Memorandum or the Fee Order, in reviewing the court's findings and other statements it made on the record, we have no reason to believe it applied an incorrect standard of law.  In its Memorandum, the bankruptcy court stated:

> The court has no difficulty at all determining that the value of Olson's services equal or exceed the compensation he seeks.  There are only a handful of attorneys in the county capable of filing a Chapter 12 case, let alone obtaining confirmation of a plan in the face of vigorous opposition.  Olson exhibited great skill in enabling Bembey to navigate through Chapter 12 and obtain confirmation of a plan.  The difficulty of the case, the skill required to handle it, the time spent on the case and the results achieved all more than justify the relatively modest fees Olson seeks.
> . . .
> There is no basis in the record for Bembey's accusations that Olson's services were ineffective, his advice was poor, or that he fabricated his bill.  Olson's hourly rate is reasonable and in line with the charges of other attorneys of equal expertise.

Mem. (May 9, 2013) 2:4-9, 2:18-20.  With these findings, it is

-12-

clear the bankruptcy court applied the correct standard of law, considering the factors under § 330(a)(3) and (a)(4)(B) as required.

The only legal issue Bembey appears to raise relates to due process. Bembey contends that he did not receive a "fair" hearing and that the bankruptcy court "shut him out completely." We disagree. Our review of the record shows that Bembey was given ample time to present his objection to the bankruptcy court and that the court considered his arguments and evidence. The court even took the matter under submission so that it could thoroughly review his objection a second time. After reviewing again Bembey's 30 allegations against Olson, it ultimately found that none of them had any merit.

The bankruptcy court rejected Bembey's contention that Olson's entire fee was to be his $7,000 retainer, as it was contrary to the written fee agreement and common practice. The court also found that Bembey was mixing "apples and oranges" by citing a fee quote he received from far less qualified attorneys for doing a much simpler chapter 13 case, which does not permit a debtor to obtain the relief Bembey obtained in chapter 12. Mem. at 2:12-14. The court found that many of Bembey's 30 allegations were based on ignorance of the complex nature of bankruptcy, and some were unsupported with any evidence. The emails Bembey asked the court to review showed "nothing but professionalism on Olson's part." Mem. at 2:17-18.

The court did express its concern with Olson not presenting Bembey with at least annual statements or estimates of his fees, which it considered good practice to avoid major surprises for the

Case: 10-11577   Doc# 117   Filed: 03/06/14   Entered: 03/06/14 13:57:06   Page 13 of 18

client at the end of the case. However, the court found that this shortcoming was compensated by Olson voluntarily reducing his fees by $3,000, and it declined to reduce his fees any further.

Bembey raises several factual issues on appeal, which we review for clear error. He begins by contending that it was his efforts and/or credentials as opposed to Olson's that allowed for a successful chapter 12 case. The bankruptcy court considered and rejected this argument, finding that Bembey's chapter 12 case could never have succeeded without Olson's assistance. On this record, particularly considering the aggressive nature of creditor IIP, we see no clear error in that finding.

Bembey next complains about Olson's failure in not sending him regular invoices to keep him apprised of his accruing fees. The bankruptcy court actually agreed with Bembey on this fact. The court found that, while not required, it would have been good practice for Olson to send Bembey at least an annual statement. However, since Olson had already voluntarily reduced his fees by $3,000, the court considered this sufficient to compensate for the problem. We do not perceive any clear error here.

Bembey argues that Olson's hourly rate was excessive, and that Olson failed to obtain Bembey's informed consent about his fees. The bankruptcy court found that based on Olson's skills and experience, $400.00/hour was a reasonable fee and in line with what local attorneys of similar expertise charge. We reject Bembey's attempt to offer the hourly rates charged by three other area bankruptcy attorneys in his appeal brief. Not only are they unsubstantiated with any admissible evidence, these particular attorneys and their rates were not presented to the bankruptcy

-14-

court.  We will not consider evidence not presented to the
bankruptcy court.  See Kirshner v. Uniden Corp. of Am., 842 F.2d
1074, 1077 (9th Cir. 1998)(appellate court cannot consider items
not presented to the trial court when it made its decision).

As for Bembey's contention that Olson failed to obtain his informed consent regarding Olson's fees, the bankruptcy court rejected his contention, finding that it was contrary to the written fee agreement.  Bembey also contradicts himself by asserting, at least twice in his brief, that he understood $7,000 was to be the total fee, but then admits that post-confirmation work would be billed later.  Aplt. Br. at 8, 16.  Bembey also claimed in his objection that he "forbid" Olson to work on the B of A matter "as [he] knew [Olson] was going to bill [him] excessively," and in his December 14, 2011 email, Bembey asked Olson not to expend any more time on the B of A matter "and incur any additional fees that [he was] unable to pay."  Clearly, Bembey was aware that Olson's fees could or would be more than $7,000, and that he would be responsible for them.  We see no clear error with either of the court's findings on these issues.

Next, Bembey contends that Olson billed him at his attorney rate of $400.00/hour for communications Bembey had with staff members, which should have been billed at $135.00/hour.  Bembey did not, and has not, specified which charges are inaccurate. Olson explained at the hearing that he never billed Bembey for any time he spent with staff members but rather absorbed that time as overhead.  Olson maintained that all time billed at $400.00/hour was for time Bembey spent with him, not his staff.  By the bankruptcy court's approval of Olson's fees in their entirety, it

-15-

implicitly found in favor of Olson on this factual issue. We discern no clear error with this finding.

Bembey complains, for the first time on appeal, about the time Olson spent contacting his and Bembey's bank when Bembey's retainer check of $6,200 was returned for insufficient funds. We do not consider factual issues not raised before the bankruptcy court. United States v. Elias, 921 F.2d 870, 874 (9th Cir. 1990). In any event, we see nothing improper about Olson billing this time to Bembey.

Bembey also complains of Olson's handling of the settlement with IIP, arguing that Olson gave him bad advice, that Olson's representation of him was poor and now Bembey is left to suffer the consequences. The bankruptcy court disagreed, specifically finding Bembey had not offered any legal or factual basis to support his accusations that Olson's services were ineffective or that his advice was poor. Bembey had also conceded at the hearing that he agreed to the settlement. We cannot conclude that the bankruptcy court committed clear error in this finding.

Next, Bembey contends that none of the time Olson billed regarding the B of A payment matter benefitted him or the estate, and that it should be disallowed. Although the bankruptcy court did not address this issue specifically, it apparently disagreed. As we noted above, Olson billed Bembey $800.00 between December 15, 2011 and April 5, 2012, for services pertaining to the B of A matter. Further, because Bembey was represented by counsel, the attorney for B of A was required to deal with Olson on this matter, and it appears that Olson only got involved at that time. Considering that Olson voluntarily reduced his fees by

-16-

$3,000, the bankruptcy court did not clearly err by not reducing them any further.

Bembey also contends that none of the time Olson billed for the State's tax claim benefitted him or the estate, as Olson had given him bad advice, and that the bankruptcy court erred when it refused to reduce Olson's fees for this matter. The bankruptcy court did not expressly address this issue, but evidently found otherwise by approving all of Olson's fees. In any event, the bankruptcy court was not required to reduce Olson's fees for this specific matter. The court does not need to follow a rigid prescription when reducing fees; it may either eliminate specific hours or reduce the overall fee award to a reasonable amount. In re Little, 484 B.R. at 511 (citing Torres Lopez v. Consejo de Titulares del Condominio Carolina Ct. Apts. (In re Torres Lopez), 405 B.R. 24, 31 (1st Cir. BAP 2009)). It would be reasonable to infer on this record that the bankruptcy court believed Olson's voluntary reduction of $3,000 remedied any potential issue with time billed for the State's tax claim matter, so further reductions were not required. Moreover, while Bembey contends that Olson logged 31 time entries for this matter post-confirmation, he failed to cite the dates for these alleged entries in his objection. He also has failed to cite to the record where we might find them. In our review, we count 23 time entries bearing any reference to the State's tax claim, for a total of $1,160.00. This, combined with the B of A matter for $800.00, totals $1,960.00. Because Olson voluntarily reduced his fees by $3,000, the bankruptcy court did not clearly err by not reducing them any further.

-17-

Case: 10-11577   Doc# 117   Filed: 03/06/14   Entered: 03/06/14 13:57:06   Page 17 of 18

Bembey next contends that the bankruptcy court erred by failing to consider that he is unable to afford any additional payments under the Plan to pay Olson. We do not see where Bembey raised this specific issue before the bankruptcy court, and he has not cited to the record showing us where he raised it. Whether an award of reasonable attorney's fees would affect the feasibility of the confirmed plan is not an issue before us. The bankruptcy court did not need to consider that issue in considering Olson's application for compensation.

## VI. CONCLUSION

We conclude that the bankruptcy court applied a correct standard of law in reviewing Olson's Fee Application. We also conclude that none of the bankruptcy court's findings of fact are illogical, implausible or without support from evidence in the record. Accordingly, we AFFIRM the Fee Order.